UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMES R. COOK                                                                CIVIL ACTION

VERSUS                                                                          NO. 05-2555

SNAP-ON TOOLS, INC.                                                  SECTION "A"(4)
RETIREMENT PLAN

### ORDER & REASONS

Before the Court are cross-Motions for Summary Judgment **(Rec. Doc. # 21)** and **(Rec. Doc. # 22)** filed by Plaintiff and Defendant respectively. After a review of the record, and for the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment **(Rec. Doc. # 22)** and **DENIES** Plaintiff's Motion for Summary Judgment **(Rec. Doc. # 21)**.

### I. BACKGROUND

Plaintiff is a former industrial salesman of Snap-On Incorporated, or "Snap-On." He retired from the company in August 1990, after becoming totally and permanently disabled. Due to his years of service with the company, Plaintiff was entitled to participate in the employee pension benefit plan, hereinafter called "the Plan." The Plan is subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, or "ERISA."

Following medical certification of permanent disability, the Plaintiff elected to apply for disability retirement benefits from the Plan. After qualifying, he accepted a disability pension starting January 1, 2005. Prior to that time, between 1990 and 2005, he received long term

disability payments.

At issue in this litigation is the Plaintiff's eligibility to receive a monthly $800.00 supplemental early retirement benefit for the period running between January 1, 2000 and December 1, 2004.

## II. ARGUMENTS

*Plaintiff*

Plaintiff's primary argument is that the Plan administrator has misinterpreted the "legally correct interpretation" of the Plan and summary plan description, or "SPD." (Pla. Memo in Supp. of MSJ, p. 12). Plaintiff asserts that under a correct interpretation of the Plan and SPD, he is entitled to the contested supplemental early retirement benefit, because these benefits "were supposed to be paid to those disability retirees who receive Social Security disability." (Pla. Memo in Supp. of MSJ, p. 11). In support, Plaintiff highlights language under sections 5.2, 5.3, and 7.4, of the Plan. (Pla. Memo in Supp. of MSJ, p. 10, citing Bates Exh. 334-336).

In further support of Defendant's alleged misinterpretation, Plaintiff urges a disjointed reading of the two pertinent paragraphs contained under the "Your Disability Pension Benefits" portion of the SPD. (Pla. Memo in Supp. of MSJ, p. 3). The language at issue reads:

> Your Disability Pension Benefits
>
> If you are qualified to receive Social Security disability benefits, your disability pension will be the same as a normal retirement pension, based on your credited service and average pay as of your disability retirement date.
>
> If you are not qualified to receive Social Security disability benefits, your disability pension will be the same as an early retirement pension, reduced according to the schedule for early retirement benefits. Since early retirement

> benefits are reduced only for benefits starting after age 50 (55 for those hired on and after April 1, 1994), if your disability pension starts before that age, it will be further reduced by 1/30 for each of those years. In addition, supplemental early retirement benefits are not payable. For this reason, if you are disabled and also qualify for early retirement, you may want to apply for early retirement instead of a disability pension.

Plaintiff's counsel argues that the first paragraph addresses his client's status as a disability retiree receiving Social Security disability payments. Further, Plaintiff asserts that the second paragraph sheds light on the Plan's proper interpretation in that "[B]y placing the latter sentence in the second paragraph, it was meant to apply to early retirees who did not retire on a disability pension." (Pla. Memo in Supp. of MSJ, p. 6). Plaintiff contends "a clear distinction was made between those disability retirees who receive Social Security disability payments (paragraph 1) and those who do not (paragraph 2). (Pla. Rep. Memo in Supp. of MSJ, p. 2).

Alternatively, Plaintiff argues that the SPD is vague and ambiguous, and accordingly, should be interpreted in favor of the employee. (Pla. Memo in Supp. of MSJ, p.11, citing *Rhorer v. Raytheon Engineers and Constructors, Inc.*, 181 F.3d 634 (5th Cir. 1999)). Furthermore, Plaintiff asserts that if there is a conflict between the actual Plan document itself, and the SPD which is meant to explain the Plan, then the SPD is binding, and shall govern. (Pla. Memo in Supp. of MSJ, p. 11, citing *Hansen v. Continental Insurance Company*, 940 F.2d 971, 985 (5th Cir. 1991)).

Plaintiff also contends that the Plan administrator has previously misrepresented the fact that petitioner would receive the supplemental retirement benefit. In support, Plaintiff notes that a Plan administrator had "previously interpreted the provisions in favor of granting the

supplemental early retirement benefit to petitioner in 1985, when an estimate of retirement income was prepared. (Pla. Memo in Supp. of MSJ, p. 12).

Finally, in addressing Defendant's failure to exhaust administrative remedies argument, Plaintiff "asserts that the claim denial included all possible claims," and in the alternative, "[H]e was not given the information necessary to specifically appeal the denial of the supplemental benefit." (Pla. Rep. Memo in Opp. to Def. MSJ, p. 7).

*Defendant*

Defendant lays out three arguments in its Motion for Summary Judgment. First, that Plaintiff's claim is barred due to his failure to utilize the Plan's administrative appeals procedure prior to filing a federal lawsuit. (Def. Memo in Supp. of MSJ, p. 3). In support, Defendant cites *McGowin v. Manpower International, Inc.*, noting "[C]laimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits." *McGowin v. Manpower International, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004).

Second, Defendant contends that the pertinent Plan provisions are not ambiguous and a person of average intelligence and experience would not need to go beyond the plain meaning of the Plan language to resolve Plaintiff's claim. (Def. Memo in Supp. of MSJ, p. 6). In support, Defendant cites *Walker v. Wal-Mart Stores, Inc.*, which notes that "courts should read the terms of the Plan in their ordinary and popular sense as would a person of average intelligence." *Walker v. Wal-Mart Stores, Inc.* 159 F.3d 938, 940 (5th Cir. 1998). Therefore, addressing the language within the Plan, Defendant argues that section 7.4 does not mention section 5.3 or say anything at all about including a monthly supplemental early retirement benefit as a part of a

disability retirement pension. (Def. Memo in Supp. of MSJ, p. 7). In fact, Defendant asserts that the Plan and SPD language is clear and unambiguous. (Def. Memo in Supp. of MSJ, p. 7).

Defendant's third argument asserts that the Plan administrators' interpretation of Plan eligibility requirements is the "legally correct interpretation." Notably, Defendant asserts that the early retirement supplemental benefit was meant to "bridge the gap" between early retirement and regular retirement at age 65. (Def. Memo in Supp. of MSJ, p. 9). The "gap" being the lack of Social Security payments an early retiree receives for the period of early retirement running until the normal retirement age of 65. (Def. Memo in Supp. of MSJ, p. 9). Defendant argues that in contrast to early retirees, a participant in disability retirement under the Plan receives an unreduced retirement benefit from the Plan in addition to supplemental Social Security income from the Social Security Administration, so there is no "gap" that needs to be bridged with a supplemental benefit. (Def. Memo in Supp. of MSJ, p. 9).

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the

non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing FED.R.CIV.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

## B. Exhaustion

Applicable Fifth Circuit case law places a burden on the claimant to "first exhaust available administrative remedies under the plan before bringing suit to recover benefits." *McGowin v. Manpower International Inc.*, 363 F.3d 556 (5th Cir. 2004) citing *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corp.*, 215 F.3d 475, 479 (5th Cir. 2000). The "primary purposes of the exhaustion requirement are to: 1) uphold Congress' desire that ERISA trustees and not the federal courts be responsible for the actions of plan administrators; 2) provide a clear record of administrative action if litigation ensues; and 3) allow judicial review of fiduciary action (or inaction) under the abuse of discretion standard, where applicable, rather than *de novo*." *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corp.*, 215 F.3d 475, 479 (5th Cir. 2000) citing *Denton v. First International Bank of Waco, Texas*, 765 F.2d 1295 (5th Cir. 1985).

However, the Fifth Circuit has recognized "exceptions to the exhaustion requirement only where resort to administrative remedies would be futile, the remedy would be inadequate, or the claimant has been denied meaningful access to the existing administrative scheme." *Chupina v. The Hartford Life and Accident Insurance Co.*, 2002 WL 1204916 (E.D.La.2002) citing *Kaler v. Metropolitan Life Insurance Co.*, 2000 WL 782072 (E.D.La. 2000).

Plaintiff sets forth two arguments addressing administrative exhaustion. First, that "[W]hen Mr. Cook appealed the denial of benefits and specifically requested the documents which were used to calculate his pension, the supplemental benefit should have been included in the calculation." (Pla. Rep Memo. in Opp. to Def. MSJ, p. 6). Second, that "he [Plaintiff] was not provided the information necessary to specifically appeal the denial of the supplemental benefit." (Pla. Rep. Memo in Opp. to Def. MSJ, p.7). Essentially, in his second argument, Plaintiff is asserting that Defendant's alleged failure to send the SPD qualifies him for the "meaningful access" exception to administrative exhaustion.

Addressing the Plaintiff's first argument, the Defendant argues "there is no evidence whatsoever that Cook raised the issue of the supplemental early retirement benefit at any time prior to filing this lawsuit." (Def. Memo in Supp. of MSJ, p. 4). Addressing Plaintiff's second argument, Defendant notes that it is "undisputed that he [Plaintiff] utilized the administrative procedures to pursue a separate claim for benefits," and that Plaintiff's second argument is "belied by the argument he makes earlier on the very same page...that his claim for the

supplemental early retirement benefit was implicitly raised through the Plan's administrative claim and appeal procedures." (Def. Rep. Memo in Supp. of MSJ, p. 5).

After a review of the record, this Court finds that the Plaintiff has failed to exhaust available administrative remedies under the Snap-On Retirement Plan. Although the record shows that claimant did generally utilize the Plan's administrative appeal process disputing his pension calculation, he did not argue that he was entitled to the supplemental early retirement benefit. Therefore, the plan administrator was not put on notice of a claim to supplemental early retirement benefits, and accordingly, was unable to address that claim. The result is that the record is bare on this issue of eligibility, and the claimant has herein raised a substantial eligibility issue for the first time in litigation before a federal court. In so doing, the Plaintiff has denied this Court the benefit of a "clear record of administrative action," thus undermining the second purpose behind the ERISA exhaustion requirement. *Bourgeois,* 215 F.3d 475.

Furthermore, this Court finds that allowing Plaintiff to proceed in this litigation would frustrate the third purpose behind requiring administrative exhaustion. Specifically, "that judicial review of fiduciary action should be under an abuse of discretion standard where applicable." *Id.* Without an opportunity for the plan administrator to render an opinion addressing all of the Plaintiff's claims, this Court is unable to apply the well established abuse of discretion standard to a considered opinion by the fiduciary. Addressing this issue of judicial involvement, the Second Circuit Court of Appeal has noted, "a court may intervene in the administration of an employee benefit plan, but should intervene only when the trustees transgress their fiduciary duties by acting in an arbitrary and capricious manner...[T]his standard

strikes a balance between excessive judicial intervention in the discharge of trustees' duties, on the one hand, and abdication of traditional judicial control of fiduciaries' actions, on the other." *Morse v. Stanley*, 732 F.2d 1139 (2nd Cir. 1984) citing *Paris v. Profit Sharing Plan*, 637 F.2d 357, 362 (5th Cir. 1981), *cert denied*, 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981).[1] With this balance in mind, allowing the Plaintiff to administratively exhaust only a portion of his claims, only to raise a substantial new claim for the first time outside of the normal review process, would in effect create an exception to the exhaustion requirement. Such a result is counter to the Fifth Circuit's well established interpretation of the purposes behind the ERISA administrative exhaustion requirement. Accordingly, this court rejects Plaintiff's first argument that entitlement to the supplemental early retirement benefit was "implicitly" raised in his calculation of benefits appeal.

Plaintiff's second argument, that "he was not provided the information necessary specifically to appeal the denial of the supplemental benefit," is unsupported by the summary judgment evidence before this Court. In particular, Plaintiff notes that "prior to his application for appeal he requested copies of all documents pertinent to the calculation of his benefits, however, he did not receive the SPD." (Pla. Memo in Opp. to Def. MSJ, p. 7). However, Plaintiff does acknowledge that "he received a copy of pertinent parts of the Plan." (Pla. Rep. Memo in Supp. of MSJ, p. 2).

In support of this argument, Plaintiff cites *Curry v. Contract Fabricators Incorporated*

---

[1] This Court notes that the current standard of review is for abuse of discretion versus the arbitrary and capricious standard.

*Profit Sharing Plan*, noting that "the failure of the plan to provide plan documents requested by plaintiff's attorney, which were necessary to explain the reasons for the denial of benefits, relieved plaintiff of his responsibility to exhaust his administrative remedies." (Pla. Rep. Memo in Opp. of MSJ, p.7) citing *Curry v. Contract Fabricators Incorporated Profit Sharing Plan*, 891 F.2d 842 (11th Cir. 1990), *abrogated on other grounds by Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313, 1315 (11th Cir. 2001). This "meaningful access exception" to the exhaustion requirement, has been recognized by the Fifth Circuit in *Meza v. General Battery Corporation*. *Meza v. General Battery Corporation*, 908 F.2d 1262 (5th Cir. 1990).

A more detailed reading of *Curry* reveals its central holding that "[W]hen a plan administrator in control of the available review procedures denies a claimant meaningful access to those procedures, the district court has discretion not to require exhaustion." *Curry*, 891 F.2d 842, 846 citing *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). This Court finds that the *Curry* case is distinguishable from the case at hand.

In *Curry*, the plan administrator initially denied a former employee's request for vested retirement benefits when he left work in 1983. *Id*. at 844. At that time, the administrator advised the former employee that he would have to wait two years before receiving payment due to a non-competition clause in the retirement plan. *Id*. at 844. After waiting two years, the former employee again tried to collect benefits, only to have the administrator refuse payment. During this entire time-frame, the plan administrator failed to send the plaintiff a written denial of his benefits claim. Following this second refusal, the former employee retained a lawyer. The lawyer thereafter verbally requested that the administrator send him the plan documents. This

10

verbal request was followed by an undated letter requesting the documents. At that time, the plan administrator referred the former employee's attorney to the company's accountant. When the attorney contacted the accountant, the accountant refused to answer questions citing a lack of authorization from the plan administrator. *Id.* at 844. The end result was that the plan administrator did not send the requested information until after the former employee filed suit in August of 1986.

In the case at hand, the record presented for summary judgment indicates extensive correspondence by both parties. Indeed, Plaintiff concedes that he did receive "a copy of the pertinent parts of the Plan." (Pla. Rep. Memo in Supp of MSJ, p. 2). In addition, the record in this case shows that following his Claim Denial Appeal in March of 2005, the Plaintiff was provided with a series of written letters explaining how the plan administrator calculated his pension. Finally, nothing in the summary judgment record confirms that Defendant failed to send the Plaintiff a copy of the SPD. Additionally, as Defendant correctly points out, "it is undisputed that he [Plaintiff] utilized the [administrative] procedures to pursue a separate claim for benefits." (Def. Rep. Memo in Supp. of MSJ, p. 4). The only evidence brought to this Court's attention which supports Plaintiff's second argument, is a letter attached as an exhibit to a reply memorandum. (Pla. Rep. Memo in Opp. to Def. MSJ, Exh.1). The letter, from Plaintiff to the Defendant, is dated January 3, 2005, and addresses Plaintiff's request for Plan documents. However, the letter does not provide any indication of whether Plaintiff received the requested documents, and if so, when. Therefore, *Curry* is distinguishable from the case at hand, and this Court finds that Plaintiff was not denied "meaningful access" to the administrative review

process.

Under the applicable summary judgment standard, once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with "specific facts" showing a genuine factual issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (citing FED.R.CIV.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).  Defendant has shown an absence of evidence on the issue of administrative exhaustion.  The Plaintiff however, has not come forward with "specific facts" showing a genuine factual issue for trial on this issue.   Plaintiff's argument that entitlement to the supplemental early retirement benefit was implicitly raised, is not supported by either evidence in the record, nor case law.  Instead, Plaintiff has offered an open-ended letter, written by the Plaintiff, which appears to address a delay in receiving the plan documents two months before the administrative appeal.  This limited evidence of "non-receipt" of the SPD, is reflected in Plaintiff's reply memorandum where he notes that "[N]othing in the record suggests that he did." (Pla. Rep. Memo in Supp. of MSJ, p. 2).  Therefore, this Court finds summary judgment in favor of the Defendant is appropriate on the basis of non-exhaustion of administrative remedies.

However, without ruling on the merits of Plaintiff's claim, it is worth noting that this Court is concerned that the language within the Defendant's SPD does appear to create an ambiguity.  This is especially true when evaluating the language within the SPD alone.  Further, although the Court is granting Defendant's Motion for Summary Judgment, Plaintiff may pursue his administrative remedies further.  If the Defendant plan administrator denies Plaintiff's

supplemental early retirement appeal, citing a failure to exhaust, or the filing of this suit as precluding his right to the supplemental early retirement benefits, then the Plaintiff will be entitled "to argue that the decision is an abuse of discretion due to the Plan's alleged failure to provide him with copies of the plans in the first instance." (citing *Meza v. General Battery Corporation*, 908 F.2d 1262, 1279 (5th Cir. 1990)).

Accordingly;

**IT IS ORDERED** that Defendant Snap-On's **Motion for Summary Judgment (Rec. Doc. # 22)** is **GRANTED** on the basis of non-exhaustion of administrative remedies.

**IT IS FURTHER ORDERED** that Plaintiff's **Motion for Summary Judgment (Rec. Doc. # 21)** is **DENIED**.

New Orleans, Louisiana, Thursday, November 30, 2006.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE